## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**DANIEL WILLIAMS,**

   **Plaintiff,**

**vs.**               **CASE NO. 1:04CV65-MMP/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

   **Defendant.**

_____/

### REPORT AND RECOMMENDATION

   This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for supplemental security income benefits (SSI) filed under Title XVI of the Act.

   Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are **not** supported by substantial evidence; thus, the decision of the Commissioner should be reversed and this cause remanded for additional proceedings.

A.    **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on March 17, 1998, alleging a disability onset date of November 1, 1991, because of residuals from a gunshot wound to the neck and back, and having one lung.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on January 15, 1999, and entered an unfavorable decision on March 5, 1999.  Plaintiff filed a new application during the pendency of his appeal to the Appeals Council and was granted disability on the second application on October 28, 1999.  On March 8, 2002, the Appeals Council vacated the decision of the ALJ, reopened the favorable decision, and remanded the case to the ALJ for additional proceedings.  On March 5, 2003, a new hearing was held and a new unfavorable decision rendered on June 24, 2003, which found that Plaintiff was not disabled from November 1, 1991, and was not entitled to benefits on the second application either.  Plaintiff appealed this decision to the Appeals Council, which denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.    **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 1, 1991, and that Plaintiff suffered from chronic neck and back pain secondary to some mild degenerative disc disease, a history of alcohol and tobacco abuse and borderline intellectual functioning, which are severe impairments.  (R. 18-19)  None of these impairments, singly or in combination, meet

**No. 1:04CV65-MMP/AK**

any of the listings.  (R. 19).  The ALJ adopted the RFC assessment of the non-examining physician over that of Dr. Greenberg because Dr. Greenberg's examination was inconsistent with his assessment that Plaintiff could lift only 20 pounds and was, therefore, limited to a light exertional work level.  (R. 19).  On the contrary the evidence of record, which is minimal since Plaintiff has sought little medical treatment, supports a finding of medium work.  (R. 20).  The ALJ then found that Plaintiff could perform his past relevant work as a factory worker and tree planter.  (R. 20).  The ALJ found Plaintiff not credible with regard to his pain and limitation because he had sought little medical treatment even though he had Medicaid for three years and received no pain medication during this time despite allegations of extreme pain.  (R. 20).

As Plaintiff described his past relevant work it was light in exertional level, and counsel for Plaintiff conceded that Plaintiff would not be found disabled unless the evidence supported a finding that he could not perform his past relevant work.  (R. 20). Thus, since the evidence supported a finding that Plaintiff could perform his past relevant work as it was described, he was not disabled.  (R. 21).

C.   <u>ISSUES PRESENTED</u>

Plaintiff argues that the ALJ did not adhere to the Order of Remand from the Appeals Council in that he did not obtain a medical expert at the second hearing; and the ALJ erred in not finding that Plaintiff met Listing 12.05(c).

The Commissioner responds that the ALJ obtained an updated psychological consultative examination from Dr. Valenstein, so that even though he did not get a

**No. 1:04CV65-MMP/AK**

medical expert, he had evidence before him to properly assess Plaintiff's mental impairment; and even if this were an error it was harmless because the evidence is strong enough to support his conclusion without the medical expert.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).  Further, the Commissioner argues that counsel failed to raise the issue of non-compliance with the Appeals Council Order of remand at the second hearing, even though present counsel represented Plaintiff at that hearing.  The Commissioner also argues that a valid IQ score is not conclusive of mental retardation if it is inconsistent with other evidence of record.

In reply, Plaintiff points out that the Order of Remand specifically directed the ALJ to obtain a medical expert and that present counsel did not represent Plaintiff at these prior proceedings contrary to the Commissioners assertion.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.   <u>STANDARD OF REVIEW</u>

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant

**No. 1:04CV65-MMP/AK**

evidence as a reasonable mind might accept as adequate to support a conclusion."
Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It
is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703
F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the
evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86
F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence
supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624
(11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to
the Commissioner's findings, where there is substantially supportive evidence of the
Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d
227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the
Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v.
Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's
failure to apply correct legal standards or to provide the reviewing court with an
adequate basis for it to determine whether proper legal principles have been observed
requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity
by reason of any medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected to last for a
continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To
qualify as a disability the physical or mental impairment must be so severe that claimant

No. 1:04CV65-MMP/AK

is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final

**No. 1:04CV65-MMP/AK**

decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659,

676 (11th Cir. 1990).

E.     **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff was by his own account shot in the lung when he was 19 to 20 years old

and now suffers from shortness of breath, and has neck and upper back problems.  (R.

82).  He claims to have pain all day and every day and takes only Tylenol, B.C. and

aspirin to relieve it.  (R. 90).  He also claims that he is unable to cook, take care of his

personal needs, clean house, wash clothes, shop, drive, but can do yard work, some

home maintenance and engage in social activities.  (R. 91-92).  Elsewhere in the record

Plaintiff states that he does his own cooking, housekeeping and shopping.  (R. 93-95).

A consultative by Dr. Robert Greenberg on May 8, 1998, found Plaintiff to have

"no clinical signs of significant respiratory impairment," and only "decreased range of

motion of the cervical spine...full range of motion of all the other joints."  (R. 107).  His

impression was "shortness of breath, secondary to previous cigarette smoking [1 and ½

packs per 45 years]" and "chronic neck pain and low-back pain, secondary to multiple

injuries including gunshot wounds."  (R. 107).  He "felt that the patient should be able to

perform most work-related activities."  (R. 107).  X-rays taken at this time showed BB

fragments in the neck and lumbar area, COPD, "prominent osteophytes and

syndesmophytes" and spurring in the lower lumbar spine with some disc narrowing at

L4-5 and L5-S1.  (R. 108).  Dr. Greenberg assessed Plaintiff as capable of lifting only 20

pounds, standing, walking, sitting not affected, and occasional limitations in climbing,

**No. 1:04CV65-MMP/AK**

crawling, crouching, stooping, kneeling, and balancing, with a restriction on exposure to fumes.  (R. 129-131).

Another consultative examination by Dr. Greenberg on August 11, 1999, found Plaintiff to have shortness of breath secondary to smoking and probably osteoarthritis of the cervical spine.  (R. 188-189).  Dr. Greenberg was of the opinion that Plaintiff could perform most work related activities.  (R. 189).

Dr. William E. Beaty examined Plaintiff on August 19, 1999, and performed a variety of tests upon him.  (R. 190-194).  In a report dated September 5, 1999, Dr. Beaty noted that Plaintiff could make sandwiches, cook a little, do his own laundry, but that his niece does most of the housekeeping and cooking.  (R. 191).  He does no yard work and has no social activities.  (R. 191).  His IQ scores are Full Scale IQ-68; Verbal-74; Performance-67; but the examiner was of the opinion that these were low estimates "confounded with his level of social-cultural experience and exposure, educational level, and his long history of chronic pain and associated depression."  (R. 192).  Dr. Beaty was of the opinion that Plaintiff would "not be a candidate for any work requiring physical exertion, and he is limited by his cognitive ability in doing mental work."  (R. 192).  Dr. Beaty found him to have "adjustment disorder with depressed mood," borderline intellectual functioning, physical injuries to neck, shoulder, painful feet, problems with vocation, social and financial functioning, with a GAF score of 60 under Axis V.  (R. 192).

**No. 1:04CV65-MMP/AK**

Dr. Valenstein performed a mental consultative examination on August 8, 2002, pursuant to the Appeals Council remand and found him not to exhibit any pain behaviors, to be alert and responsive, to display normal affect, and to have average attention and concentration skills.  (R. 217-221).  She was of the opinion that "Mr. Williams has a number of areas that when put together would interfere with his ability to function effectively in the work place.  His age, lack of literacy skills, concrete thought processes and low level of intellectual functioning would all create a situation where he would have difficulty with work related tasks."  (R. 218).  She found marked limitations in his abilities to understand, remember, and carry out simple instructions and extreme limitations if these instructions were detailed.  (R. 220).  She found him to have "borderline intellectual functioning, pulmonary, cardiac problems, reported past history of injuries to his neck and back, financial strain," and "60" is indicated by Axis V.  (R. 218-219).

A hospital admission to Shands on October 20, 2001, for abdominal and chest pain following an emergency room visit resulted in a finding of diverticular disease and alcohol abuse.  (R. 231-249).  He was also found to have unstable angina, but no evidence of an infarction was found.  (R. 250-277).

A RFC dated May 19, 1998, by Dr. Tetlow and based on medical evidence from treating sources assessed Plaintiff's capabilites as: able to lift 50 pounds occasionally, able to lift 25 pounds frequently, stand, walk and sit 6 hours out of an 8 hour day, with a

limitation of concentrated exposure to fumes, dusts, and gases because of COPD.  (R. 112-119).

Another RFC dated July 14, 1998, by Dr. Puestow, not based on treating medical source records was the same as Dr. Tetlow's assessment, except no environmental restrictions were noted.  (R.  120-127).

A RFC dated October 20, 1999, by Dr. Knowles found virtually no limitations of any type, except as to climbing on ladders or scaffolding.  (R. 195-202).

A Mental RFC dated October 16, 1999, and accompanying Psychiatric Review form completed by Dr. J. Patrick Peterson assessed Plaintiff as capable of "sustaining the mental demands of appropriate concentrated task oriented activity," with "significantly subaverage general intellectual functioning" but without a physical or other mental impairment imposing additional work related limitations.  (R. 203-215).

## F.    SUMMARY OF THE ADMINISTRATIVE HEARING

At the second hearing held on March 5, 2003, following Appeals Council remand, Plaintiff appeared with attorney Michael Bossen.  (R. 323).  Plaintiff testified that he was born on January 31, 1940, attended school through the seventh grade, but cannot read or write more than his name.  (R. 327).  He last worked 12 or 13 years prior to the hearing because he was helping take care of his brother, who had cancer.  (R. 328). During the time he took care of his brother, he lived in his brother's home, had food stamps, and received some cash from his brother, who received disability.  (R. 328-331).  His past relevant work includes picking vegetables and "setting trees," which he

**No. 1:04CV65-MMP/AK**

described as sitting down on a "setter" apparently pulled by a tractor and he'd plant seedlings which he could hold in one hand (this was the only measure he could come up with as to the weight of these items).  (R. 332-336).  His work at a sausage factory was when he was around 45 years old, and he was on his feet most of the day, but did no heavy lifting just a lot of pushing and pulling.  (R. 337-338).  He claims that he is unable to work now because of the gunshot wounds to his back and neck which occurred many years before, but which have begun to cause him pain.  (R. 338-339).  He has been to the hospital lately for chest pains, but could not recall any other treatment.  (R. 339).  He has no regular doctor.  (R. 344).  He has never sought treatment for his back pain, but went to the emergency room when his back went out.  (R. 345).  He could not recall when this occurred, but thinks they gave him shots and medication, which he no longer takes.  (R. 346).  He never went to the health department for any of his problems because he did not think it would help.  (R. 347).

The ALJ and counsel for the Plaintiff discussed the dilemma created by counsel's appeal of the first decision in light of the approval of the subsequent application.  (R. 352-353).  As the ALJ points out, the approval would not have been vacated and consolidated for review by the ALJ if counsel had not appealed, and counsel referred to the approval in his letter requesting the appeal.  (See R. 165-167).

The ALJ finds an inconsistency in Dr. Valenstein's report in that she found Plaintiff to have marked and extreme limitations in cognitive areas, but gave him a global assessment of functioning (GAF) score of 60, which is "almost normal."  (R. 363).


**No. 1:04CV65-MMP/AK**

Plaintiff's attorney asked for clarification, but the ALJ argued that clarification would not "get you any closer to where you need to be, because in order for you to prevail, you would have to demonstrate he couldn't do any of his past relevant work, and I'm afraid the evidence leads a reasonable mind to a contrary conclusion." (R. 364). The vocational expert is asked to assess the nature of Plaintiff's work as he describes it, and the expert finds that the farm work was medium and the tree planter was heavy according to the DOT, but light as Plaintiff described it. (R. 365). The ALJ advised counsel that he believed Plaintiff could perform medium work, but whether he assessed Plaintiff's capabilities as medium or light, he would still be able to perform his past relevant work, as he described it, and for him to get past step 4, he must show that he could only perform sedentary (below light) work and the evidence is not there. (R. 366-373). The attorney agrees that further testimony from the vocational expert is unnecessary. (R. 370).

[The transcript from pages 374 to 389 appear to be misfiled and to concern another Plaintiff, a different ALJ, and a different hearing.]

**G.    DISCUSSION**

a)      Order of Remand dated March 8, 2002 (R. 171-172)

The Appeals Council vacated the decision of the ALJ dated March 5, 1999, wherein the ALJ found that Plaintiff has the residual functional capacity to perform a medium level of work, which did not preclude performance of his past relevant work as a farm worker and tree planter. (R. 171-172). The Appeals Council noted:

**No. 1:04CV65-MMP/AK**

> [T]hat he was found to be 'disabled' in an initial determination on his subsequent claim, based on the assumption that he had no past relevant work.  Moreover, in relation to the subsequent claim, a mental status consultative examination was performed on September 5, 1999.  This examination included IQ scores interpreted as showing Borderline Intellectual Functioning.  The claimant was also diagnosed with an Adjustment Disorder.  Consequently, it was the opinion of the State agency examiner that he has a severe mental impairment.  (R. 171).

This disability finding was based on a consultative examination by Dr. William Beaty, as evidenced in a report dated September 5, 1999.  ( R. 171).  The Appeals Council further stated:

> In light of the above, the Administrative Law Judge will obtain updated medical evidence concerning the claimant's mental impairment in order to complete the administrative record in accordance with regulatory standards concerning consultative examinations and existing medical evidence (20 CFR 416.912-13).  The additional evidence will include updated records from the claimant's treating mental health sources(s), if any exist, and will include a consultative mental status examination and medical source statements about what the claimant can still do despite the impairment. Additionally, the Administrative Law Judge will obtain evidence from a medical expert, if possible in psychiatry, in order to clarify the nature and severity of the impairment 20 CFR 416.927(f) and Social Security Ruling 96-6p.  Subsequently, the Administrative Law Judge will reevaluate the claimant's residual functional capacity in accordance with Social Security Ruling 96-8p and reconcile the discrepancy regarding whether or not he has any past relevant work (20 CFR 416.945). Thereafter, the Administrative Law Judge will determine whether any additional evidence from a vocational expert is required regarding any nonexertional limitations which are established.

Thus, the ALJ was directed to do five things upon remand: (1) obtain an updated mental evaluation; (2) obtain an updated RFC assessing the effect of his mental status on his ability to work; (3) utilize the services of a medical expert to evaluate the nature and severity of Plaintiff's mental condition; (4) resolve any discrepancy about Plaintiff's

**No. 1:04CV65-MMP/AK**

past relevant work with regard to his updated RFC; and (5) determine whether a vocational expert should testify if nonexertional limitations are established from the updated mental status evidence.

The ALJ obtained an updated mental evaluation by Dr. Candace Valenstein, who examined the Plaintiff on August 8, 2002.  (R. 216-221).  The ALJ also obtained an updated RFC of his mental abilities to do work related activities by Dr. Valenstein.  (R. 220-221).  As counsel for the Plaintiff notes, the ALJ did not obtain a medical expert, a fact that was not discussed at the hearing nor addressed in his decision.  What was discussed at the hearing was that the ALJ was not going to adopt the findings of Dr. Valenstein in her mental RFC assessment because she had given Plaintiff a GAF score of 60, which was "almost normal," and therefore did not support the marked and extreme limitations she found in the updated RFC assessment.  The ALJ even made several statements to the effect that Dr. Valenstein was "lying," but he provides no basis for this rather bold accusation.  (See 363).  When counsel suggested that clarification of the discrepancy between the GAF score and the limitations should be obtained, the ALJ stated that this would not resolve anything.  However, it seems to the undersigned that resolution of this discrepancy is crucial, especially since Dr. Beaty, whose findings were the basis of a disability award because of a severe mental impairment, *also* gave Plaintiff a GAF score of 60.  (See R. 219 and R. 192).  As the Court reads the Appeals Council remand order, the Council wanted a medical expert to assess the nature and severity of Plaintiff's mental condition *precisely* because he had been awarded disability

**No. 1:04CV65-MMP/AK**

on the second application based on Dr. Beaty's findings.  Since it appears that the ALJ rejected the updated mental RFC by Dr. Valenstein solely because of the GAF score, the ALJ should have explained (or better yet have a medical expert explain) why the same score was sufficient for a finding of disability by state agency examiners, but not sufficient for a similar finding by the ALJ upon remand.  Obviously the Appeals Council wanted this question resolved and directed that the testimony of an expert be obtained to this end.  Without some definitive resolution as to the severity of Plaintiff's mental condition and a medical explanation for why the findings of Dr. Beaty supports a disability award and similar findings by Dr. Valenstein do not, there is not sufficient evidence to support the ALJ's decision.  Therefore, the Court does not find that the ALJ's failure to obtain a medical expert was harmless error, and this cause should be remanded on this ground.  See Lubinski v. Sullivan, 952 F.2d 214, 216 (8th Cir. 1991); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (error by the ALJ will be held harmless if the evidence is strong enough to support the outcome despite the lapse).

b)      Listing 12.05(c)

Listing 12.05 is the listing for mental retardation.  The requirements for 12.05(C) are:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

While the record supports a finding of an IQ score falling within this listing, there is simply not sufficient evidence of a physical or other mental impairment that would limit

**No. 1:04CV65-MMP/AK**

Plaintiff's ability to work.  As the ALJ noted, Plaintiff sought no medical treatment for his neck and back pain, despite having the means to seek such treatment, and his pulmonary and alleged cardiac problems were not diagnosed as severe or limiting.  Dr. Beaty noted that Plaintiff suffered from adjustment disorder with depressed mood, but did not indicate in his assessment of limitations whether this additional mental impairment caused any limitations or if the limitations noted were solely because of his borderline intellectual functioning.  This additional mental condition (adjustment disorder) may have supported the disability award on the second application, *i.e.* the disability award may have been based on a finding that Plaintiff met Listing 12.05(C), but the decision on that application is not in the present record.

The undersigned is always reluctant to remand a case for additional administrative proceedings when it is such an old case and has already had two hearings, but there is not enough evidence to remand this for payment of benefits because it is not clear that he meets Listing 12.05.  See Edwards by Edwards v. Heckler, 755 F.2d 1513 (11th Cir. 1985) (reversal for payment of benefits is proper when the evidence supports a finding that a person met the requirements of a listing).

Finally, the Commissioner's argument that present counsel did not raise the issue of failure to comply with the Appeals Council order before the ALJ is not well taken because it is factually incorrect.  Plaintiff was represented by Michael Bossen at both hearings, and present counsel is Erik Berger.

Accordingly, it is respectfully **RECOMMENDED**:


**No. 1:04CV65-MMP/AK**

That the decision of the Commissioner denying benefits be **REVERSED**, and this cause **REMANDED** for additional proceedings, specifically that the ALJ adhere precisely to the directives of the Appeals Council Order remanding the cause.  (See R. 171).

**At Gainesville, Florida, this 30th day of August, 2005.**

s/ A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:04CV65-MMP/AK**